**This order is SIGNED.**


**Dated: March 28, 2024**





_____
**PEGGY HUNT**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

|  |  |
|---|---|
| In re: | |
| INLAND BOAT CLUB, LLC, | Bankruptcy Case No. 22-21879 |
| Debtor. | Chapter 11, Subchapter V |
| INLAND BOAT CLUB, LLC, | |
| Plaintiff, | |
| v. | Adversary Proceeding No. 22-02071 |
| ADAM LEE, an individual; CASEY WARREN, an individual; UTAH STATE TAX COMMISSION; and U.S. SMALL BUSINESS ADMINISTRATION, | Honorable Peggy Hunt |
| Defendants. | |
| ADAM LEE, an individual and CASEY WARREN, an individual, | |
| Counterclaim Plaintiffs, | |
| v. | |
| INLAND BOAT CLUB, LLC, | |
| Counterclaim Defendant. | |

ADAM LEE, an individual and CASEY
WARREN, an individual,

     Third Party Plaintiffs,

v.

ERIK BLOMQUIST, an individual;
HEATHER MCKENZIE, Trustee of THE
HEATHER MCKENZIE FAMILY
TRUST DATED 1/30/2020; MICHAEL
LEWIS, an individual; JULIE C. LEWIS,
Trustee of THE LEWIS FAMILY TRUST
DATED 12/30/2021; and CHARLES D.
WESTOVER, Trustee of THE CHARLES
DAVID WESTOVER REVOCABLE
TRUST, DATED 2/22/08,

     Third Party Defendants.

---

ADAM LEE, an individual and CASEY
WARREN, an individual,

     Third Party Plaintiffs,

v.

ROCK CANYON BANK,

     Third Party Defendant.

## MEMORANDUM OF DECISION

   Two matters are before the Court: (1) a Motion for Summary Judgment (the "**SJ Motion**")[1] filed by Hillcrest Bank, a division of NBH Bank and successor to Rock Canyon Bank as Third-Party Defendant (the "**Bank**") regarding a Third-Party Claim asserted against the Bank by Adam Lee and Casey Warren as Third-Party Plaintiffs (collectively, the "**Creditors**"); and (2) a Motion to Dismiss (the "**Motion to Dismiss**")[2] filed by the Creditors requesting voluntary

---

[1] Adv. Dkt. No. 104. References herein to "Adv. Dkt. No." refer to docket entries in the above-captioned adversary proceeding. References to "Dkt. No." refer to docket entries in the above-captioned bankruptcy case.

[2] Adv. Dkt. No. 106.

dismissal of the Third-Party Claim.[3] Notices of the SJ Motion and the Motion to Dismiss

(collectively, the "**Motions**") and of hearings on the Motions were filed and properly served and

no further notice is required.[4] Both Motions are opposed.[5]

The heart of the dispute is whether the Creditors' Third-Party Claim against the Bank

should be dismissed with or without prejudice. The Bank maintains that there are no genuine

disputes of material fact and, therefore, the Court should dismiss the Third-Party Claim as a

matter of law with prejudice pursuant to Federal Rule of Civil Procedure 56(a), made applicable

to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"). The Creditors, without citing any authority, argue that the Court should

dismiss the Third-Party Claim without prejudice so that they may pursue the Claim against the

Bank in state court.

The Court held a hearing on the SJ Motion on November 7, 2023, at which time the

parties presented oral argument. That hearing was continued to December 5, 2023, the time set

for hearing on the Motion to Dismiss, and on that date the Motion to Dismiss was argued. The

Motions involve the common facts and similar requests for relief and, therefore, at the

---

[3] The Creditors seek to dismiss "this adversarial proceeding together with all of its counterclaims, crossclaims and third-party complaints . . . without prejudice." Motion to Dismiss, p. 4. The Motion to Dismiss is denied to the extent it seeks to dismiss the adversary proceeding, counterclaims and crossclaims. The Creditors, as Third-Party Plaintiffs, cannot dismiss the entire adversary proceeding, they have not argued the basis for dismissal of counterclaims asserted against the Debtor, and no crossclaims were made. *See* Motion to Dismiss; Amended Third Party Complaints, Adv. Dkt. No. 61 (as defined below, the "**Complaint**"). The Creditors' Third-Party Claim against parties other than the Bank, *see id.* at pp. 2–19, has been resolved through settlement or voluntary dismissal. *See* Plan of Reorganization Under Subchapter V of Chapter 11 Dated March 27, 2023 (as Modified at Confirmation Hearing)*, Dkt. No. 268 (hereinafter, the "**Confirmed Plan**"), § 5.2.1(c) (settlement with Third-Party Defendant Charles D. Westover, as Trustee); Order Confirming Debtor's Plan of Reorganization Under Subchapter V of Chapter 11 Dated March 27, 2023 (As Modified), Dkt. No. 273 (hereinafter, the "**Confirmation Order**"), ¶ K (approving settlement); Stipulation of Dismissal of Third Party Complaint Against the Charles David Westover Revocable Trust, dated February 22, 2008, Adv. Dkt. No. 96; Order Granting in Part Third Party Plaintiffs' Motion to Dismiss Third Party Complaint as to Certain Third Party Defendants, Adv. Dkt. No. 115 (dismissing Third-Party Claim against remaining non-Bank Defendants). Thus, the Court only addresses the Motion to Dismiss to the extent it pertains to the Third-Party Claim against the Bank.
[4] Adv. Dkt. Nos. 105, 107.
[5] Adv. Dkt. Nos. 108 (hereinafter, "**Creditors' SJ Objection**"), 109 (hereinafter, **Bank's SJ Reply**"), 111.

conclusion of the hearing, the Court took the Motions under advisement. The Court now enters

this *Memorandum of Decision*, concluding that (1) to the extent not moot, the Court has post-

confirmation subject matter jurisdiction to dismiss with prejudice the portions of the Creditors'

Third-Party Claim that are impermissible collateral attacks of the Court's final orders barred as a

matter of law, and (2) the portion of the Claim seeking damages against the Bank for negligence

must be dismissed without prejudice because the Court lacks subject matter jurisdiction.

## I.    FACTS

The facts set forth below are undisputed based on the record before the Court.

### General Background

The Debtor, Inland Boat Club, LLC, operated a boat sharing service. Its customers

purchased annual membership agreements, affording them certain services and the right to use

one of the Debtor's premium boats fourteen days of each boating year.[6] Until the sale of the

Debtor's assets, discussed below, the Debtor owned approximately twenty-six boats (the

"**Boats**").[7]

In 2020 and early 2021, the Creditors transferred approximately $2.9 million to the

Debtor in a series of transactions. The Creditors allege some or all these transactions were

secured by the Boats and that the Debtor promised it would repay the Creditors when it obtained

bank funding.[8] In May 2021, the Debtor borrowed $3.9 million from the Bank pursuant to a

promissory note and that debt was secured by the Boats and other property of the Debtor.[9] The

---

[6] *See* Confirmed Plan, p. 1.
[7] *See* Dkt. No. 272, Ex. 1 (Asset Purchase Agreement, at ¶ B & Sch. 2.1(a)).
[8] SJ Motion, ¶¶ 2–5, 24, 28; Creditors' SJ Objection, ¶¶ 4–5, 11(k); *see* Complaint, pp. 23–24 at ¶¶ 20(a)–(b), Exs. 1–3.
[9] SJ Motion, ¶¶ 5, 25–27; Creditors' SJ Objection, ¶¶ 4, 11(l)–(n), 12; Bank's SJ Reply, p. 3; *see* Claims Dkt. No. 10-1 (hereinafter, the "**Westover POC**").

Creditors' loans were not repaid when the Bank funded its loan to the Debtor.[10] Litigation in

Utah state court followed involving the liens asserted against the Boats and other issues.[11] The

state court action was stayed when the Debtor filed its petition seeking relief under Subchapter V

of Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**")[12] on May 20,

2022.[13]

      Sometime shortly after the petition date, the Bank assigned its rights and interests in its

promissory note and related secured interests in the Debtor's property to the Charles David

Westover Revocable Trust Dated February 22, 2008 ("**Westover**").[14] Westover filed a Proof of

Claim against the Debtor, asserting a secured claim in the amount of approximately

$3,816,000.[15] The Creditors also filed Proofs of Claim asserting secured claims against the

Debtor.[16]

### Relevant Matters in the Present Adversary Proceeding

      The Debtor commenced the present adversary proceeding against, among others, the

Creditors shortly after it filed its bankruptcy case. Relevant to the matter now before the Court is

(1) the resolution of the Debtor's claims against the Creditors in this proceeding, and (2) the

Creditors' Third-Party Claim against the Bank which is the subject of the Motions being

considered.

---

[10] Creditors' SJ Objection, ¶ 16; Bank's SJ Reply, p. 4. The Creditors allege additional facts related to circumstances giving rise to the Bank's loan to the Debtor. Creditors' SJ Objection, ¶¶ 13–21 & Exs. A & B (Creditors' Declarations). The Bank denies or objects to many of the allegations and asserts its own additional facts. Bank's SJ Reply, pp. 3–7; Adv. Dkt. No. 110 (Declaration of Todd Guymon). The Court need not address the disputed facts based on the analysis below.
[11] SJ Motion, ¶ 6; Creditors' SJ Objection, ¶ 5.
[12] 11 U.S.C. § 101 *et seq*.
[13] *See* 11 U.S.C. § 362(a).
[14] SJ Motion, ¶ 7; Creditors' SJ Objection, ¶ 6; Westover POC, p. 5; *see* Dkt. No. 14 (Schedule D, ¶ 2.3 (scheduling Bank as a creditor holding a secured claim but acknowledging the transfer to Westover)).
[15] *See* Westover POC.
[16] Claims Dkt. Nos. 12-1, 13-1.

*The Debtor's Complaint Against the Creditors and the Settlement Agreement*

The Debtor commenced this adversary proceeding against the Creditors asserting that the Creditors' liens against the Boats were avoidable under Sections 544(b) and 548 of the Bankruptcy Code, and objecting to the Creditors' Proofs of Claim.[17] The Debtor maintained that the Creditors could not assert secured claims because they did not have liens against the Boats, and if they did, those liens were junior in priority to the lien that the Bank assigned to Westover.[18] The Debtor also filed a separate Objection to the Creditors' Proofs of Claim making similar arguments to those made in this proceeding.[19]

The Court entered an Order granting the Debtor summary judgment on one of its avoidance causes of action, holding that the Creditors did not perfect whatever interest they had in the Boats and, therefore, their asserted liens were avoidable under Section 544(b) of the Bankruptcy Code and preserved for the benefit of the bankruptcy estate under Section 551.[20] The Debtor's other causes of action against the Creditors and the Debtor's Objection to the Creditors' Proofs of Claim were not adjudicated, but rather were resolved pursuant to a settlement agreement that was approved by the Court.[21] In that agreement, the parties acknowledged that the Creditors' liens had been avoided and agreed to the amount of the Creditors' general unsecured claims against the Debtor.[22]

---

[17] Adv. Dkt. No. 1.
[18] *Id.*
[19] Dkt. No. 283.
[20] Adv. Dkt. No. 51; *see* SJ Motion, ¶¶ 14–17; Creditors' SJ Objection, ¶ 11(a)–(c).
[21] Dkt. No. 313.
[22] *Id.* at Ex. 1.

*The Creditors' Third-Party Claim Against the Bank*

The Creditors filed Third Party Complaints in this proceeding which included a Third-Party Claim against the Bank (the Third Party Complaints as subsequently amended are collectively referred to as the "**Complaint**").[23] The Third-Party Claim asserts three causes of action, discussed below, based on allegations that the Bank knew or should have known that the Creditors lent the Debtors approximately $2.9 million and held liens against the Boats; that the Bank should have ensured that the Debtor paid the Creditors from the monies it lent the Debtor; and that the Debtor was operating a Ponzi-like scheme that was fueled by the Bank's relationship with the Debtor to the Creditors' detriment.[24]

The Creditors state in their Complaint that the Third-Party Claim against the Bank is a core proceeding in which the Court may enter final orders and judgments, but to the extent consent is required, they consent to the Court's entry of final orders and judgments.[25] The Bank denies that the Third-Party Claim is a core proceeding, but states that "[t]o the extent the Court has subject matter jurisdiction on any or all claims asserted against [the Bank], [the Bank] consents to this Court's entry of final orders or judgment."[26]

### The Final Restructuring Orders

The Debtor successfully obtained confirmation of its Plan of Reorganization Under Subchapter V of Chapter 11 Dated March 27, 2023 (As Modified at Confirmation Hearing) (the "**Confirmed Plan**")[27] pursuant to an Order Confirming Debtor's Plan of Reorganization Under

---

[23] Adv. Dkt. Nos. 7, 61. References to the "Complaint" herein are to the Amended Third Party Complaints, Adv. Dkt. No. 61, at pp. 19–35 (asserting Third-Party Claim against the Bank).
[24] *See* Complaint; *see also* SJ Motion, ¶¶ 24, 28; Creditors' SJ Objection, ¶¶ 4, 11(k) and 11(o).
[25] Complaint, ¶¶ 7–9.
[26] Adv. Dkt. No. 97, ¶ 9; *see id*. ¶¶ 7, 8.
[27] Dkt. No. 268.

Subchapter V of Chapter 11 Dated March 27, 2023 (As Modified) (the "**Confirmation Order**").[28] Integral to the Confirmed Plan was the sale of substantially all of the Debtor's assets and the assumption and assignment of its membership contracts to Westover as initially memorialized in a Memorandum of Understanding (the "**MOU**")[29] and finalized in an Asset Purchase Agreement (the "**APA**").[30] Thus, concurrently with the Confirmation Order, an Order was entered pursuant to Section 363(b), (f) and (m) of the Bankruptcy Code approving the APA and authorizing the transactions with Westover (the "**Sale Order**").[31] Essential to both the approved sale transaction and to confirmation of the Debtor's plan was a settlement set forth in Section 5.2.1(c) of the Confirmed Plan (the "**Westover Settlement**") by and between the Debtor and Westover and by and between the Creditors and Westover. The Westover Settlement included a settlement of all claims of the Debtor and the Creditors against Westover, and the Debtor's release of claims against Westover and the Bank. The Court approved the Westover Settlement as part of the Confirmation Order.[32]

Under the approved APA, Westover purchased substantially all of the Debtor's assets for $4,500,000.[33] This amount was paid partially in cash and partially through Westover's credit bid of its secured claim for the Boats in the amount of $3,450,000 in accordance with Section 363(k) of the Bankruptcy Code.[34] The parties' agreement to the credit bid and the amount of the bid was

---

[28] Dkt. No. 273.
[29] Dkt. No. 233, Ex. A.
[30] Dkt. No. 272, Ex. 1; *see* Confirmed Plan, §§ 1.3.2, 5.2.1(c), 7.1.1, 7.5.1, 11.1.3, 11.2.4 & APA, §§ 6.1(e); 9.9, 10.1 (reflecting integral nature of Confirmed Plan and APA).
[31] Dkt. No. 272.
[32] Confirmation Order, ¶¶ K, 4.
[33] APA, § 4.1.
[34] *Id*.

part of the Westover Settlement.[35] Closing of the APA transaction was expressly conditioned on

the Court's approval of the release set forth in the Westover Settlement.[36]

**Procedures Related to Confirmation of the Plan and Approval of the Sale Transaction**

The Confirmation Order and the Sale Order were entered after significant notice to the

Creditors. Specifically, the Creditors were served with motions seeking, among other things,

approval of procedures governing the plan confirmation process[37] and procedures governing the

proposed sale transaction (collectively, the "**Procedural Motions**"),[38] as well as notices of

hearings on and opportunities to object to the Procedural Motions.[39] After several preliminary

hearings, an evidentiary hearing was held on the Procedural Motions, at which the Court

considered the Creditors' objections to the relief requested,[40] including their initial objection to

Westover's right to credit bid its secured claim for the Boats. Incorporating by reference findings

of fact and conclusions of law made on the record at the conclusion of the evidentiary hearing,

the Court entered Orders granting the Procedural Motions and overruling the Creditors'

objections (the "**Procedural Orders**").[41] The Procedural Orders were served on the Creditors.[42]

The Debtor followed the procedures approved by the Procedural Orders,[43] and an

evidentiary hearing was scheduled to consider approval of the APA and confirmation of the

Debtor's proposed plan. Prior to the hearing, the Creditors were served with a motion seeking

---

[35] *Id*. at § 4.1(b); *see* Confirmed Plan, § 5.1.2(c).
[36] APA, § 6.2(e); *see id.* at §§ 6.1(e), 9.9(c).
[37] Dkt. No. 122.
[38] Dkt. No. 233 (amending Dkt. Nos. 119, 170, 221).
[39] *See* Dkt. Nos. 120, 123, 171. Hearings on the Procedural Motions were held on Jan. 17 and 31, 2023, Feb. 7 and 28, 2023, and March 21, 2023. At these hearings, the noticed hearing date was continued on the record. The Creditors appeared at each of the hearings.
[40] *See* Dkt. Nos. 129, 140, 142, 211, 213.
[41] Dkt. Nos. 237, 239.
[42] Dkt. Nos. 244, 246.
[43] *See* Sale Order, pp. 2–3; Confirmation Order, ¶¶ E, F, I.

approval of the APA,[44] the proposed plan,[45] notices of evidentiary hearings and opportunity to

object,[46] and Ballots to vote to accept or reject the proposed plan. The Ballots expressly stated

that if the plan was confirmed it would be binding on the Creditors.[47]

     The Creditors initially objected to the proposed sale and to confirmation of the Debtor's

proposed plan.[48] With regard to the sale, the Creditors continued to maintain, as they did with the

Procedural Motions, that Westover could not credit bid on the Boats because, as the Bank's

successor in interest, Westover did not hold a first-priority lien against the Boats. Regarding the

proposed plan, the Creditors ambiguously stated that they objected to "any provision . . . seeking

to under cut" their claims and attempting to affect the outcome of this adversary proceeding.[49]

They also objected to the releases of Mike Lewis and Erik Blomquist (but not Westover or the

Bank) in the proposed plan.[50]

     Subsequently, the Creditors withdrew their objection to the proposed sale transaction,

recognizing that the sale to Westover was their best chance of obtaining a recovery. They thus

stipulated to Westover's credit bid on the Boats, and agreed as part of the Westover Settlement,

that they were settling all claims and theories against Westover made in their Objection to

Westover's Proof of Claim[51] and in this adversary proceeding.[52] The Creditors did not withdraw

their objection to confirmation of the proposed plan.

     A second evidentiary hearing was held on the sale motion and confirmation of the

Debtor's proposed plan. At the close of the hearing, the Court granted the sale motion and

---

[44] Dkt. No. 233.
[45] Dkt. Nos. 77, 118, 182, 183, 220, 240, 268.
[46] *See* Dkt. Nos. 241, 242, 248, 254.
[47] Dkt. No. 237, Ex. A.
[48] Dkt. Nos. 98, 129, 256.
[49] Dkt. No. 256, pp. 2–3.
[50] *Id.* at pp. 3–4.
[51] *See* Dkt. Nos. 217, 218.
[52] Dkt. No. 247; Confirmed Plan, § 5.2.1(c).

confirmed the plan, overruling the Creditors' objection to confirmation and making findings of fact and conclusions of law on the record. The Court then entered the Sale Order and the Confirmation Order, incorporating by reference its findings and conclusions, and specifically overruling the Creditors' objection to confirmation of the plan.[53] The Sale Order, the Confirmed Plan and the Confirmation Order were served on the Creditors.[54]

The Creditors did not appeal the Procedural Orders, the Sale Order, or the Confirmation Order. Notice of, among other things, the May 12, 2023 "Effective Date" of the Confirmed Plan and of substantial confirmation of the Confirmed Plan, was served on the Creditors.[55] The sale approved by the Sale Order closed on or before the Effective Date.[56] The Confirmed Plan has been substantially consummated under Sections 1101(a)(2) and 1183(c)(2) of the Bankruptcy Code.[57]

## The Present Motions

The Motions both seek dismissal of the Third-Party Claim. The Bank, wanting the entire Third-Party Claim dismissed with prejudice, maintains that the Court has jurisdiction under title 28 of the United States Code and theories of ancillary or supplemental jurisdiction to do so based on the undisputed facts and the law.[58] The Creditors, appearing to be under the mistaken belief that the Court has already ruled on jurisdiction,[59] request that the Court decline to exercise

---

[53] Confirmation Order, ¶ 2.
[54] Dkt. Nos. 268, 272, 273.
[55] Dkt. Nos. 274, 299.
[56] *See* Confirmed Plan, § 11.2.4 (Effective Date conditioned on sale closing).
[57] Dkt. No. 299.
[58] Based on the discussion herein, the Court need not address the Bank's arguments on supplemental or ancillary jurisdiction at SJ Motion, ¶¶ 29–33 & n.4.
[59] The Creditors hint at a lack of jurisdiction because their Third-Party Claim is based on state law. Creditors' SJ Objection, ¶ 24; Motion to Dismiss, p. 4. But, referencing earlier matters before the Court, they incorrectly state the Court has "already decided it has subject matter jurisdiction in a full and complete review." Creditors' SJ Objection, ¶ 25; *see* Creditors' SJ Objection, ¶ 12 (stating Court is exercising "discretionary jurisdiction"). The Creditors references are to the Court's denial of the Creditors' Motion For Relief From Automatic Stay, Dkt. No. 57, seeking relief to litigate claims in the state court, and the Court's denial of a Motion to Dismiss filed by Westover and the

jurisdiction and dismiss the Third-Party Claim without prejudice so that they may return to state court. Without citing any legal authority, they argue that "there is no further reason for this Court to exercise jurisdiction" over the Third-Party Claim because it raises issues of state law that do not involve the Debtor and the Debtor's claims against them are no longer in dispute.[60] If the Court exercises jurisdiction, the Creditors contend that the Bank is not entitled to summary judgment because there is a genuine dispute as to material facts and the law does not support the Bank's positions.[61]

## II.   SUBJECT MATTER JURISDICTION

Although not challenged, the Court must determine whether it has subject matter jurisdiction over the Creditors' Third-Party Claim.[62] The Claim is comprised of three causes of action against the Bank, specifically one asserting an action under the Utah Uniform Voidable Transactions Act (the "**Avoidance Action**"); a second seeking a declaratory judgment as to validity, priority and extent of the Bank's lien against the Boats (the "**Declaratory Judgment Action**"); and a third seeking damages against the Bank for negligence (the "**Negligence Action**") (collectively, the "**Causes of Action**"). For the reasons discussed below, the Court concludes that it has jurisdiction over the Avoidance Action and, if not moot, the Declaratory Judgment Action. It does not have jurisdiction over the Negligence Action.

---

Bank. *See* Adv. Dkt. Nos. 55, 60, 61, 63. The Court did not rule on its jurisdiction over this proceeding when it denied the Creditors' request for relief from stay, but rather found that "cause" did not exist to lift the stay to allow the Creditors to continue litigating their pre-petition action in state court. Dkt. No. 91; *see* 11 U.S.C. § 362(d)(1). The Court also did not decide its jurisdiction in denying the earlier Motion to Dismiss, but rather declined to consider the Motion because it was directed at the Creditors' initial Third-Party Complaint and that Complaint was superseded and rendered of no legal effect when the Creditors filed their amended Complaint. Adv. Dkt. No. 91.
[60] Motion to Dismiss, p. 4; *see* Creditors' SJ Objection, ¶¶ 2, 9.
[61] Creditors' SJ Objection, ¶¶ 9–21, 26–38 & Exs. A, B.
[62] *See, e.g.*, *MOAC Mall Holdings LLC v. Transform Holdco LLC et al.*, 598 U.S. 288, 297 (2023).

### Bankruptcy Court Jurisdiction and Authority to Enter Final Orders and Judgments

Subject matter jurisdiction in bankruptcy is governed by Section 1334 of title 28 of the United States Code. Section 1334(a) confers the district court, and by referral, the bankruptcy court, with jurisdiction over cases filed under the Bankruptcy Code, stating district courts have "original and exclusive jurisdiction of all cases under title 11."[63] Section 1334(b) applies to civil proceedings commenced within a bankruptcy case, stating that district courts, and through referral, bankruptcy courts, have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[64] Thus, subject matter jurisdiction over civil proceedings filed in a bankruptcy case exists only if they "arise under" the Bankruptcy Code, "arise in" the bankruptcy case, or are "related to" the bankruptcy case.[65]

A proceeding "arising under" title 11 is a cause of action created by the Bankruptcy Code.[66] A proceeding "arising in" a bankruptcy case involves issues that would not exist outside the filing of a bankruptcy case.[67] Proceedings "arising under" the Bankruptcy Code and "arising in" a bankruptcy case are "core" proceedings in which the bankruptcy court has the authority to enter final orders and judgments.[68] Examples of matters that may be included as core proceedings are outlined in Section 157(b)(2) of title 28.[69]

---

[63] 28 U.S.C. § 1334(a); *see id.* § 157(a); *see also* DUCivR 83-7.1 (D. Utah Order of Reference).
[64] 28 U.S.C. § 1334(b); *see id.* § 157(a); *see also* DUCivR 83-7.1 (D. Utah Order of Reference); *Pettine v. Direct Biologist, LLC (In re Pettine)*, 655 B.R. 196, 209 (B.A.P. 10th Cir. 2023) (bankruptcy court's jurisdiction under § 1334(b) is derivative of that afforded to the district court).
[65] *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) (cited in *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (B.A.P. 10th Cir. 1997)); *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 673 (B.A.P. 10th Cir. 2012).
[66] *Midgard Corp.*, 204 B.R. at 771.
[67] *Id.*
[68] 28 U.S.C. § 157(b)(1); *Houlik*, 481 B.R. at 673; *Midgard Corp.*, 204 B.R. at 771.
[69] *See Stern v. Marshall*, 564 U.S. 462, 474–75 (2011).

Whether a proceeding is "related to" a bankruptcy case is more difficult to define as the term itself is broad in scope. In *Celotex Corporation v. Edwards*,[70] the United States Supreme Court stated that, while not limitless, "related to" jurisdiction is to be read in the context that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[71] The Court of Appeals for the Tenth Circuit held in *Gardner v. United States (In re Gardner)*[72] that a proceeding is "related to" a bankruptcy case if it does "not depend on the bankruptcy laws for [its] existence and . . . could proceed in another court" absent the bankruptcy case.[73] The test for determining jurisdiction over such a proceeding is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[74] The proceeding need not be against the debtor or its property, but rather is "related to" the case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting the handling and administration of the estate."[75]

Proceedings that are "related to" a bankruptcy case are "non-core" proceedings.[76] Bankruptcy courts may hear non-core proceedings, but unlike core proceedings, bankruptcy courts lack authority to enter final orders and judgments in non-core proceedings absent consent of the parties.[77] When consent is not afforded,

> the bankruptcy judge shall submit proposed findings of fact and conclusions of
> law to the district court, and any final order or judgment shall be entered by the

---

[70] 514 U.S. 300 (1995).
[71] *Id*. at 308 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).
[72] 913 F.2d 1515 (10th Cir. 1990) (per curiam).
[73] *Id*. at 1518 (quoted in *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1173 (10th Cir. 2000)).
[74] *Gardner*, 913 F.2d at 1518.
[75] *Id*.
[76] *Plotner*, 224 F.3d at 1173; *Houlik*, 481 B.R. at 674; *Midgard*, 204 B.R at 771; *see* 28 U.S.C. § 157(b)(3)–(4) & (c)(1).
[77] 28 U.S.C. § 157(c); *see Stern*, 564 U.S. at 475; *Loveridge v. Hall (In re Renewable Energy Dev. Corp.)*, 792 F.3d 1274 (10th Cir. 2015).

district judge after considering the bankruptcy judge's proposed findings of fact and conclusions of law and after reviewing de novo those matters to which any party has timely and specifically objected.[78]

Accordingly, because of the limited authority afforded to bankruptcy courts in non-core proceedings, it is important to determine whether a proceeding is a core proceeding "arising under" the Bankruptcy Code or "arising in" a bankruptcy case, or whether the proceeding is a non-core proceeding that is "related to" the case.[79] As discussed below, this determination is important when considering the scope of a bankruptcy court's jurisdiction after confirmation of a Chapter 11 plan.

### The Effect of Chapter 11 Plan Confirmation on Bankruptcy Court Jurisdiction

Bankruptcy court jurisdiction continues to be governed by Section 1334 after the confirmation of a Chapter 11 plan. The plain language of Section 1334 does not limit jurisdiction post-confirmation and, likewise, there is nothing in Section 157 that limits a bankruptcy court's authority to enter orders and judgments post-confirmation. The Bankruptcy Code expressly anticipates that bankruptcy courts will continue to have jurisdiction after confirmation,[80] and the Supreme Court has not questioned post-confirmation jurisdiction.[81] It is generally understood, however, that plan confirmation may impact the jurisdictional analysis under Section 1334(b) even if the bankruptcy court "retains" jurisdiction under a plan.[82]

---

[78] 28 U.S.C. § 157(c)(1).

[79] See id. § 157(b)(3) (bankruptcy court determines whether proceeding is core or non-core proceeding).

[80] See, e.g., 11 U.S.C. §§ 347, 350, 524–525, 1112(b)(4)(L)–(O), 1127, 1141–1144, 1192–1194; Fed. R. Bankr. P. 3020(d); accord Binder v. Price Waterhouse & Co. LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 165 (3rd Cir. 2004).

[81] See Travelers Indemnity Co. v. Bailey, 557 U.S. 137 (2009).

[82] A confirmed plan cannot afford a court jurisdiction that does not exist under title 28. See, e.g., Resorts Int'l, Inc., 372 F.3d at 161 ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.") (quoted in In re CS Mining, LLC, 2018 WL 2670457 at *8–9, 2018 Bankr. LEXIS 1618 at *20–21 (Bankr. D. Utah June 1, 2018) (Thurman, J.)). If there is jurisdiction under § 1334(b),

Confirmation of a plan does not impact jurisdiction over core proceedings "arising under" the Bankruptcy Code or "arising in" a bankruptcy case.[83] As discussed above, such proceedings involve specific Bankruptcy Code provisions or would not exist outside of the bankruptcy case. Plan confirmation, therefore, should not alter the jurisdictional analysis when a proceeding "arises under" the Bankruptcy Code or "arises in" a bankruptcy case.

It is well-settled, however, that the scope of jurisdiction over non-core proceedings "related to" a bankruptcy case "narrows to some extent after plan confirmation . . . ."[84] This is proper because, as noted above, "related to" jurisdiction "cannot be limitless."[85] While confirmation of a plan does not end the bankruptcy case, confirmation often marks a significant culmination of events in the case, including in many instances the revesting of property of the estate in the debtor or a post-confirmation entity.[86] This would appear, in many instances, to obviate the "related to" test articulated by the Tenth Circuit in *Garner* because that case did not involve post-confirmation jurisdiction and was based on the existence of an "estate."[87] While the

---

the terms of the confirmed plan apply. *Resorts Int'l, Inc.*, 372 F.3d at 161. The Court has retained post-confirmation jurisdiction over this proceeding. Confirmed Plan, Art. 12; *see* Confirmation Order, ¶ N; *see also* APA, § 11.12(a) (all disputes connected to APA to be resolved in this Court).

[83] *Houlik*, 481 B.R. at 678 (Brown, J. concurring) (citing *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3rd Cir. 2007)); *see, e.g., Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229–230 (2nd Cir. 2002) (post-confirmation action involving issues related to a sale approved by the bankruptcy court and integral to confirmed plan was a core proceeding); *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass)*, 301 F. 3d 296, 306 (5th Cir. 2002) ("Proceedings invoking the bankruptcy court's statutory authority [under § 1142(b)] to enter orders necessary for the consummation of a confirmed plan" "arise in" a bankruptcy case "because the authority can be exercised only in the context of a bankruptcy case."); *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063–64 (5th Cir. 1997) (post-confirmation declaratory judgment action as to whether confirmation order bars collection of a pre-confirmation liability is a core proceeding and reorganization plan which was confirmed by the bankruptcy court was a core proceeding).

[84] *Houlik*, 481 B.R. at 675 (jurisdiction is narrowed and fact dependent); *see also e.g., Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 106 (1st Cir. 2005) (same); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193–94 (9th Cir. 2005) (same and citing cases); *Resorts Int'l, Inc.*, 372 F.3d at 165 (discussing limited scope); *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390–91 (5th Cir. 2001) (same).

[85] *Celotex*, 514 U.S. at 308.

[86] *See* 11 U.S.C. § 1141(b).

[87] *See, e.g., Resorts Int'l, Inc.,* 372 F.3d at 165 (discussing limits of cases tying post-confirmation jurisdiction to the existence of an estate).

Tenth Circuit has recognized post-confirmation "related to" jurisdiction, it has not articulated a test defining the scope of such "related to" jurisdiction.[88]

The Court need not address an appropriate test for determining the scope of post-confirmation "related to" jurisdiction in this proceeding. As discussed below, the Avoidance Action and the Declaratory Judgment Action "arise under" the Bankruptcy Code or "arise in" the Debtor's case and therefore, a discussion of "related to" jurisdiction is not necessary. The Court also does not need to analyze the scope of post-confirmation "related to" jurisdiction in conjunction with the Negligence Action because the Court never had jurisdiction over that Action as it is not a proceeding "arising under" the Bankruptcy Code, or "arising in" or "related to" the Debtor's Chapter 11 case.

## Post-Confirmation Proceedings Involving the Interpretation, Implementation or Enforcement of a Confirmed Plan or Confirmation-Related Orders are Core Proceedings

Post-confirmation proceedings involving the interpretation, implementation or enforcement of a confirmed plan, a confirmation order, and orders integral to confirmation of a plan typically are core proceedings. They usually will "arise under" at least Section 1141(a) of the Bankruptcy Code, or "arise in" the bankruptcy case by invoking a substantive right provided by the Bankruptcy Code or by being a proceeding that would arise only in the context of the bankruptcy case. This conclusion is supported by the reasoning in a concurring opinion of the Bankruptcy Appellate Panel for the Tenth Circuit in *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*,[89] where it was stated that the bankruptcy court's post-confirmation ability to

---

[88] *See Houlik*, 481 B.R. at 675 n.84 (citing *U.S. Trustee v. CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1237 (10th Cir. 1998) ("related to" jurisdiction existed); *see also Plotner*, 224 F.3d at 1161 (post-confirmation proceeding); *Lopez v. Fed. Trade Commission (In re Peterson)*, 6 Fed. App'x. 837, 839 (10th Cir. April 17, 2001) (noting potential for post-confirmation jurisdiction if "related to" bankruptcy case).
[89] 481 B.R. 661 (B.A.P. 10th Cir. 2012).

interpret and enforce its own orders, particularly when disputes arise over a plan or confirmation

order, and to implement or enforce the confirmed plan are core proceedings.[90]

   In so holding, the Court recognizes a body of law regulating post-confirmation

proceedings involving the interpretation, implementation, or enforcement of confirmed plans and

confirmation orders as being "related to" the bankruptcy case. In a leading case, *Binder v. Price

Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,[91] the Court of Appeals for the Third Circuit

expressly declined to address whether the proceeding before it was a core proceeding. Rather, the

Court said it would focus on whether the post-confirmation action was "related to" the

bankruptcy case since "'related to' jurisdiction is the broadest of the potential paths to

bankruptcy court jurisdiction[.]"[92] The Court went on to hold that a post-confirmation

proceeding is "related to" the bankruptcy case if there is a "close nexus to the bankruptcy plan or

proceeding" and that "[m]atters that affect the interpretation, implementation, consummation,

execution, or administration of the confirmed plan will typically have the requisite close

nexus."[93] Post-confirmation disputes implicating the integrity of the bankruptcy process were

also held to be "related to" the case under the close nexus test.[94]

   Often relying on this concept, it is not unusual for a "related to" jurisdictional analysis to

be a default in post-confirmation proceedings, including those involving the interpretation,

implementation, or enforcement a confirmed plan.[95] Applying a "related to" jurisdictional

---

[90] *Id.* at 678–79 (Brown, J., concurring) (citing *Petrie Retail, Inc.*, 304 F.3d at 230; *U.S. Brass*, 301 F.3d at 305–06; *In re Nat'l Gypsum Co.*, 118 F.3d at 1064; *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1020 (5th Cir. 1991); *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 218–19 (D. Haw. 2006)).
[91] 372 F.3d 154 (3rd Cir. 2004).
[92] *Id.* at 163.
[93] *Id.* at 167.
[94] *Id.*
[95] *See Seven Fields Dev. Corp.*, 505 F.3d at 260 (rejecting default position); *Houlik*, 481 B.R. at 678 (concurring opinion) (citing *Thickstun Bros. Equip. Co. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co.)*, 344 B.R. 515, 520–21 (B.A.P. 6th Cir. 2006)).

analysis in such actions does not result in an incorrect outcome—such matters are *at least* "related to" to the bankruptcy case. Yet, as pointed out in *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*,[96] a case decided by the Third Circuit after *Resorts Int'l*, and in the concurring opinion in *Houlik*, a "related to" jurisdictional analysis does not apply to all post-confirmation proceedings and need not be analyzed if a core proceeding exists.[97]

Assuming proceedings involving the interpretation, implementation or enforcement of a confirmed plan, confirmation order and orders integral to confirmation are "related to" proceedings—which means they are non-core proceedings—may have significant consequences, especially if a party has not consented to the bankruptcy court entering a final order or judgment. In such cases, the bankruptcy court would be required to submit proposed findings of fact and conclusions of law on its interpretation, implementation, or enforcement of its own orders to the district court, with the district court reviewing any objections *de novo*. As pointed out in the concurring opinion in *Houlik*, this is inconsistent with well-established law recognizing that bankruptcy courts "plainly [have] jurisdiction to interpret and enforce [their] own prior orders."[98] Furthermore, one party's gamesmanship could significantly undercut the bankruptcy court's final orders through improper collateral attacks[99] that interfere with the well-established res judicata effect of a confirmed plan.[100] Without the promise of finality, the ability to maximize a

---

[96] 505 F.3d 237 (3rd Cir. 2007).

[97] *Id.* at 260; *Houlik*, 481 B.R. at 678.

[98] *Houlik*, 481 B.R. at 679 (quoting *Travelers Indem. Co.*, 557 U.S. at 151 (in turn citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934))); *see, e.g.*, *Dalton Dev. Project #1 v. Unsecured Creditors Committee (In re Unioil)*, 948 F.2d 678, 682 (10th Cir. 1991) (recognizing bankruptcy court's power to enforce its own orders); *CS Mining, LLC*, 2018 WL 2670457 at *7, 2018 Bankr. LEXIS 1618 at *14 and n.47 (citing 11 U.S.C. § 105(a)).

[99] *See, e.g.*, *Travelers Indem. Co.*, 557 U.S. at 154 (collateral attacks of final orders cannot be squared with res judicata); *Celotex*, 514 U.S. at 307 (same); *Oriel v. Russell*, 278 U.S. 358 (1929) (rejecting collateral attack of bankruptcy court order).

[100] *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010) (party adversely affected by terms of a confirmed Chapter 13 plan who received notice of the plan and opportunity to be heard but failed to object before expiration of appeal deadline was not entitled to relief from the confirmation order); *Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann)*, 505 F.3d 1033, 1047 (10th Cir. 2007) (quoting 11 U.S.C. § 1327(a), which

reorganization (or to achieve an orderly liquidation) in Chapter 11 could be significantly

impaired. Finally, even if parties have consented to the bankruptcy court entering a final order

and judgment, such as in this case, automatically relying on post-confirmation "related to"

jurisdiction can have significant impact if mandatory abstention is suggested under Section

1334(c)(2) of title 28[101] because that provision applies to non-core proceedings without reference

to consent.[102]

Accordingly, post-confirmation proceedings involving the interpretation, implementation

or enforcement of a confirmed plan, a confirmation order and related orders integral to a

confirmation order generally should be deemed to be core proceedings over which the

bankruptcy court has jurisdiction and authority to enter final orders and judgments. Doing so is

in accord with title 28, is consistent with well-established law recognizing that issuing courts

have the authority to interpret and enforce their own orders, preserves the integrity of final

orders, and appropriately rules out consideration of mandatory abstention.

### Jurisdictional Analysis Applied to the Creditors' Causes of Action

The dispute presently before the Court involves a question of whether the Creditors'

Causes of Action against the Bank should be dismissed with or without prejudice. Until this

dispute is resolved, the merits of the Causes of Action are not at issue. Applying the above

---

makes a Chapter 13 plan binding upon confirmation, and serves the same purpose as res judicata), *abrogated on other grounds by Espinosa*, 559 U.S. at 260; *Laing v. Johnson (In re Laing)*, 31 F.3d 1050, 1051 (10th Cir. 1994) (a confirmed Chapter 11 plan is binding as a final judgment on the merits); *Behles-Giddens, P.A. v. Raft (In re K.D. Co., Inc.)*, 254 B.R. 480, 490 (B.A.P. 10th Cir. 2000) (same); *see also Plotner*, 224 F.3d at 1161 (sale order became final and was res judicata).

[101] This Section states: "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

[102] *See generally*, *Telluride Asset Resolution, LLC v. Telluride Global Dev., LLC (In re Telluride Income Growth, L.P.)*, 364 B.R. 390, 398–99 (B.A.P. 10th Cir. 2007); *Midgard Corp.*, 204 B.R. at 777–81.

jurisdictional analysis to the Causes of Action with this in mind, the Court concludes that it has

subject matter jurisdiction over the Avoidance Action and, if not moot, the Declaratory Judgment

Action. The Court does not, however, have jurisdiction over the Negligence Action.

As discussed in Part III.A. below, consideration of whether the Avoidance Action should

be dismissed with or without prejudice requires a decision involving interpretation of the

Confirmed Plan, and enforcement of the Confirmed Plan, the Confirmation Order, and the APA

approved by the Sale Order.[103] The Court therefore has subject matter jurisdiction over the

matter because it "arises under" at least Section 1141 of the Bankruptcy Code and/or "arises in"

the Debtor's case as it implicates authority that can only be exercised in the context of this

bankruptcy case.[104] As a core proceeding, the Court has authority to enter a final order and

judgment adjudicating the dispute.

The Declaratory Judgment Action requires a decision involving the enforcement of the

Confirmed Plan, the Procedural Orders, the Confirmation Order and the Sale Order for the

reasons stated in Part III.B.[105] Accordingly, to the extent not moot, the Court has jurisdiction

over the Declaratory Judgment Action for the same reasons as the Avoidance Action and

authority to enter a final order and judgment deciding the dispute.

In so holding, the Court recognizes that the Creditors have suggested, with no analysis,

that the Court should abstain from adjudicating the Avoidance and Declaratory Judgment

---

[103] The Avoidance Action itself may be a core proceeding as a proceeding "to determine, avoid, or recover fraudulent conveyances[.]" 28 U.S.C. § 157(b)(2)(H). The Court need not make this determination because it is not being asked to adjudicate the merits of the Avoidance Action, but rather to determine whether the Action should be dismissed with or without prejudice.
[104] *See* 28 U.S.C. § 157(b)(2) (core proceedings "include, but are not limited to" the enumerated list of matters); 28 U.S.C. § 157(b)(2)(L), (N) and (O); *U.S. Brass*, 301 F.3d at 305–06.
[105] The Declaratory Judgement Action may be a core proceeding as it involves a determination of the "validity, extent, or priority of liens[.]" 28 U.S.C. § 157(b)(2)(K). The Court is not determining the merits of the Action and, therefore, it does not address this issue.

Actions. They maintain that "there is no further reason for this Court to exercise jurisdiction"

over the Actions as they raise issues of state law that do not involve the Debtor and the Debtor's

claims against them are no longer in dispute.[106] The Court notes that abstention has not been

properly raised and likely is waived.[107] But, based on the record and for the reasons discussed

below, the Court will not abstain from hearing these Actions[108] and, as core proceedings, there is

no requirement that the Court do so.[109]

Finally, as discussed in Part III.C., the Court never had jurisdiction over the Negligence

Action because it does not "arise under" the Bankruptcy Code and does not "arise in" and is not

"related to" the Debtor's case. Accordingly, the Court cannot enter a final order and judgment in

the Negligence Action and it must be dismissed without prejudice.

## III.    ANALYSIS OF REQUESTED RELIEF

### A.    The Avoidance Action Must Be Dismissed With Prejudice Because it is an Improper Collateral Attack of the Confirmed Plan and the Court's Final Orders.

The Creditors' Avoidance Action[110] makes a claim for "VOIDABLE TRANSACTIONS

(Utah Code § 25-6-101 et seq.)" on the basis that as creditors of the Debtor, the Creditors have

claims against the Bank under the Utah Uniform Voidable Transactions Act ("**UVTA**").[111] The

Creditors "aver that the obligations incurred by [the Debtor] to [the Bank], the liens incurred, the

payments made from the credit line, and/or transfers of assets by [the Debtor] . . . constitute

voidable transfers under the UVTA."[112] The Creditors' Avoidance Action must be dismissed with

---

[106] Motion to Dismiss, p. 4; *see* Creditors' SJ Objection, ¶¶ 2, 9.
[107] *See* 1 COLIER ON BANKRUPTCY, ¶ 3.05 (Richard Levin & Henry J. Sommer eds., 16th ed.) (discussing requirements under § 1334(c)).
[108] *See* 28 U.S.C. § 1334(c)(1) (discretionary abstention).
[109] *See* 28 U.S.C. § 1334(c)(2) (mandatory abstention).
[110] Complaint, ¶¶ 49–50.
[111] Utah Code Ann. § 25-6-101 *et seq.*
[112] Complaint, ¶ 62.

prejudice because it may not be pursued as a matter of law. Upon commencement of this case, the Debtor controlled the Avoidance Action, it released the Bank for claims under the UVTA, and the Debtor had authority to do so. That release cannot be attacked by the Creditors.

Section 544(b) of the Bankruptcy Code provides that, upon commencement of a bankruptcy case, a debtor in possession[113] "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding" an allowed unsecured claim.[114] Debtors in possession, therefore, step into the shoes of unsecured creditors and may pursue state law avoidance claims, such as those under the UVTA, for the benefit of the bankruptcy estate to the exclusion of all creditors.[115] The right of debtors in possession to pursue UVTA claims, as opposed to individual creditors, advances one of the core goals of the Bankruptcy Code—to make an equitable distribution of assets to all creditors as part of a collective proceeding.[116] No creditor should be allowed "to push its way to

---

[113] *See* 11 U.S.C. § 1107 (debtor in possession has powers of trustee).

[114] 11 U.S.C. § 544(b)(1).

[115] *See, e.g.*, *Haskell v. Bruno's, Inc. (In re PWS Holding Corp.)*, 303 F.3d 308, 314–15 (3rd Cir. 2002); *Deutsche Bank Trust Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 946 F.3d 66, 83 (2nd Cir. 2019); *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997); *In re Berg*, 376 B.R. 303, 311 (Bankr. D. Kan. 2007) (citing *Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 427 (Bankr. C.D. Ill. 2004)); *see also Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81 (2nd Cir. 2014) (bankruptcy court properly enjoined conspiracy-based claims against fraudulent transfer defendants which were derivative of those asserted by trustee); *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575 (5th Cir. 2008) (trustee pursues property of the estate such as avoidance actions); *In re Hafen*, 640 B.R. 581, 589 (Bankr. D. Utah 2022) (Thurman, J.) (trustee owns and controls avoidance rights concurrently with creditors and creditors' rights are paused during administration of the case). Although avoidance actions appear to be "property of the estate" under the broad language of § 541(a) of the Bankruptcy Code, the Court need not address that issue because § 544(b) expressly gives debtors in possession authority to bring such actions by stepping into the shoes of individual creditors.

[116] *See, e.g.*, *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1204 (9th Cir. 2005) ("Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding" that includes the trustee's control of avoidance actions); *PWS Holding Corp.*, 303 F.3d at 314 (same); *Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d at 83 (recognizing under preemption concepts that "disposition of [a § 544(b)(1)] claim extinguishes the right of creditors to bring state law, fraudulent conveyance actions."); *Berg*, 376 B.R. at 314 ("The purpose of § 544(b) and related avoidance provisions is 'to consolidate all of the debtor's assets.'" (quoting *N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989))); *see, generally*, *Unioil*, 948 F.2d at 682 (recognizing goal of equitable distribution).

the front of the line of creditors" by asserting individual state law avoiding rights.[117] When a debtor in possession refuses to bring an avoidance claim, creditors may request authority from the bankruptcy court to bring the claim derivatively for the benefit of all creditors.[118]

When the Debtor filed its Chapter 11 case, therefore, only the Debtor had authority to assert claims seeking to avoid its pre-petition transfers or obligations under the UVTA (the "**Potential UVTA Claims**"). The Creditors' avoidance action then pending in the state court was stayed under Section 362(a) of the Bankruptcy Code and the Creditors were not authorized to continue to assert their UVTA claims against the Bank without first making a demand on the Debtor. It is undisputed that the Creditors never requested approval to bring UVTA claims derivatively for the benefit of all creditors. The Debtor ultimately released all Potential UVTA Claims against the Bank as part of the Westover Settlement which was integral to confirmation of the plan and entry of the Confirmation Order, as well to Westover's performance under the approved APA.

Specifically, Section D4 of the parties' MOU states that Westover's purchase of substantially all of the Debtor's assets was contingent on "[a] release of all claims of the Debtor's estate, its successors, and assigns . . . against [Westover], its affiliates, or predecessor(s) in interest, including Hillcrest Bank and Rock Canyon Bank."[119] The Westover Settlement in the Confirmed Plan, in turn, included a "release by the Debtor of parties identified in Section D4 of the MOU and such release explicitly including . . . Rock Canyon Bank, Hillcrest Bank, a division

---

[117] *Martin Arsham Sewing Co*., 873 F.2d at 887 (internal quotations omitted) (cited in *PWS Holding Corp*., 303 F.3d at 314).

[118] *See, e.g., Springs East Land Co., LLC v. Goss (In re Ellicott Springs Res., LLC)*, 485 B.R. 626, 636 (Bankr. D. Colo. 2013).

[119] MOU, § D.4.

or [sic] NBH Bank, [and] Westover . . . ."[120] The APA expressly made closing of the sale

transaction contingent on approval of the Westover Settlement.[121] The Court approved the

Westover Settlement,[122] including its releases,[123] concluding the Settlement was permissible

under Sections 1123, 1129 and 1191 of the Bankruptcy Code and Bankruptcy Rule 9019,[124] and

that the releases were an essential means of implementing the Plan, were in the best interest of

the Debtor's estate, and were allowable under applicable law.[125] The Confirmed Plan enjoined

any person from "continuing any action . . . or act to collect . . . or recover" a claim against the

Debtor from the Potential UVTA Claims released under the Plan.[126]

        As outlined above, it cannot be disputed that the Creditors were given ample notice of all

proceedings resulting in the Confirmed Plan, the Confirmation Order and the Sale Order, and

were given an opportunity to be heard. They consented to the sale transaction, which was

contingent on approval of the Bank's release, and any objections that the Creditors had to

confirmation of the Debtor's proposed plan and the release of the Potential UVTA Claims against

the Bank were overruled. The Creditors did not appeal the Confirmation Order or the Sale Order

and those Orders are now final. Having been afforded due process,[127] the Confirmed Plan is

binding on the Creditors under Section 1141(a) of the Bankruptcy Code, Section 17.8 of the

Confirmed Plan, and Paragraph 6 of the Confirmation Order, and is entitled to res judicata effect.

---

[120] Confirmed Plan, § 5.2.1(c).
[121] APA, § 6.2(e) (condition of closing included that the releases set forth in § 5.2.1(c) of the proposed plan, including those applicable to the Bank, be approved); *see id.* at §§ 6.1(e), 9.9(c).
[122] Confirmation Order, ¶ 4.
[123] *Id*. at ¶ 8.
[124] *Id*. at ¶ K.
[125] *Id*. at ¶ J.
[126] Confirmed Plan, § 15.4.
[127] *See Unioil*, 948 F.2d at 678 (Chapter 11 plan is not binding absent due process) (citing *Reliable Elec. Co., Inc. v. Olson Constr. Co.*, 726 F.2d 620, 623 (10th Cir. 1984)); *see also* Confirmation Order, ¶ E (notice was proper).

The Creditors' desired collateral attack of the Confirmed Plan and Confirmation Order is not permissible.

Although not clear, the Creditors may be continuing to assert the Avoidance Action on the bases that: the Debtor lacked authority to release their Avoidance Action; the Confirmed Plan and Confirmation Order do not expressly enjoin their Avoidance Action against the Bank; or, notwithstanding the Debtor's release, they continue to possess rights under the UVTA. Again, these arguments are essentially an improper collateral attack of this Court's final orders. The arguments also fail to address well-established law recognizing a debtor in possession's authority to settle or release state law avoidance actions and the preclusive effect that a settlement or release has on unsecured creditors, even ones who asserted avoidance actions against a transferee pre-petition, such as the Creditors in this case.[128] As stated in *In re Berg*,[129]

> The purpose of § 544(b) and related avoidance provisions is to consolidate all of the debtor's assets. The Chapter 7 Trustee is charged with the duty to evaluate and, if beneficial to the estate, pursue avoidable transfers. Settlement with non-debtors involved in pre-petition acts is a valuable tool in fulfilling that duty. If the Trustee's release of such persons from liability under § 544 did not bar subsequent litigation by the debtor's unsecured creditors, expeditious administration of estates would be impaired. Unlike debtors who settle with the Trustee, non-debtor transferees have no expectation of discharge and must rely upon the terms of a settlement or res judicata to protect them from a multiplicity of suits.[130]

Although *Berg* involved a Chapter 7 trustee, the same principles apply to a Chapter 11 debtor in possession. The debtor in possession, as a fiduciary,[131] may take actions with court approval that in its business judgment benefit all creditors and the estate, including releasing UVTA claims

---

[128] *See, e.g.*, *PWS Holding Corp.*, 303 F.3d at 314–16; *Berg*, 376 B.R. at 313 (citing cases); *In re GenTek Inc.*, 328 B.R. 423, 429 (Bankr. D. Del. 2005). In *Hafen*, 640 B.R. at 590, creditors had standing to pursue state law avoidance claims which were not pursued by a Chapter 7 trustee. A release was not involved.
[129] 376 B.R. 303 (Bankr. D. Kan. 2007). The Creditors state that *Berg* and cases like it do not apply because it is not attacking the debt to the Bank, but rather the transfer of security. Creditors' SJ Response, ¶ 33. The Court fails to see the distinction—the cases discussed herein deal with a debtor's settlement of avoidable transfer claims.
[130] 376 B.R. at 314–15 (internal quotations and citations omitted).
[131] *See, e.g.*, *Rushton v. Am. Pac. Wood Prods., Inc. (In re Americana Expressways, Inc.)*, 133 F.3d 752, 756 (10th Cir. 1997); *Jensen v. U.S. Trustee (In re Smitty's Truck Stop., Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997).

which it controls pursuant to Section 544(b). Creditors who disagree may, as discussed above,

seek authority to bring the claims derivatively for all creditors. If this does not happen and the

debtor ultimately obtains approval of a release,[132] the transferee of the alleged fraudulent transfer

is entitled to rely on that release and creditors are bound by it. Universal releases are necessary to

provide the debtor in possession with the tools it needs to maximize the estate for the benefit of

all creditors.

For these reasons, the Creditors many not further pursue the Avoidance Action in this

Court or in the state court. The Avoidance Action is barred as a matter of law and must be

dismissed with prejudice.

**B.      The Declaratory Judgment Action is Moot; But to the Extent Not, the Action
         Must Be Dismissed With Prejudice.**

In the Declaratory Judgment Action, the Creditors are seeking a "judgment determining

that the rights, claims, title and interest of [the Bank] and its successors and assigns in and to the

collateral of [the Debtor – *i.e.,* the Boats] is junior to the [Creditors'] interest in the same

collateral."[133] They maintain that their interests in the Boats is governed by Utah Code Ann.

§ 41-1a-601 and that the Bank's lien is not valid because the Bank had knowledge of the

Creditors' interests in the Boats when it obtained an interest in the collateral.[134] The Declaratory

Judgement Action must be dismissed for two reasons. First, it is moot. And second, even if not,

the Declaratory Judgment Action is barred as an impermissible collateral attack of the Confirmed

Plan and related Orders.

---

[132] Such a release may be pursuant to a settlement agreement approved under Bankruptcy Rule 9019 or proposed as part of a chapter 11 plan. 11 U.S.C. § 1123(b)(3).
[133] Complaint, p. 35 (Prayer for Relief, ¶ c).
[134] *Id*. at ¶ 66.

Federal courts, including bankruptcy courts, "may only decide actual ongoing cases or controversies."[135] Thus, if a proceeding is moot, the Court lacks subject matter jurisdiction, regardless of whether jurisdiction would have existed under Section 1334(b) of title 28.[136] "Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit . . . [.]"[137] "In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties."[138] "The crucial question is whether granting the *present* determination of issues offered will have some effect in the real world."[139]

The parties have not argued the issue of mootness of the Declaratory Judgment Action, but this being an issue of subject matter jurisdiction, the Court must address it.[140] Reviewing the uncontested record in this case, the Declaratory Judgment Action is moot. It is undisputed the Bank transferred its lien against the Boats to Westover, and that the Debtor's sale of the Boats and substantially all its assets to Westover "free and clear of any interest" was approved by this Court as part of the Sale Order.[141] Even if the Creditors had a lien against the Boats and that lien had priority over the lien the Bank transferred to Westover, the Boats have been sold to Westover free and clear of interests, Westover was released under the Confirmed Plan, and the Creditors are enjoined from pursuing Westover.[142] Entering a judgment on the validity and priority of

---

[135] *Schell v. OXY USA, Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016); *see Pettine*, 655 B.R. at 206–12 (Art. III constraints on a district court's jurisdiction also constrain bankruptcy courts).
[136] *Schell*, 814 F.3d at 1114.
[137] *Id*. (internal quotations omitted).
[138] *Id*.
[139] *Id*. (emphasis in original) (internal quotation omitted).
[140] *Id*. at 1113–14.
[141] Sale Order, ¶ 3.
[142] Confirmed Plan, §§ 5.2.1(c); 15.2, 15.4; *see* Confirmation Order, ¶¶ J, 8.

claimed liens therefore will have no effect in the real world. The Declaratory Judgment Action is moot and must be dismissed.

To the extent that it could be argued that the Declaratory Judgment Action is not moot, the Action must be dismissed with prejudice as a matter of law. As discussed above, the Creditors' liens were avoided and they ultimately consented to general unsecured claims against the Debtor. The Procedural Orders, the APA and the Westover Settlement in the Confirmed Plan were all premised on Westover, as the Bank's successor, holding a valid and enforceable lien against the Boats that could be credit bid under Section 363(k) of the Bankruptcy Code. Although they initially objected to Westover's position, the Creditors ultimately became party to the Westover Settlement, agreeing to withdraw their Objection to Westover's Proof of Claim and settling "all claims" they asserted against Westover in this adversary proceeding.[143] While the Confirmed Plan does not indicate that the Creditors themselves released the Bank, the Creditors recognize that Westover "stepped into the shoes" of the Bank when it obtained the lien against the Boats and acquired the same rights held by the Bank.[144] They cannot attack the validity of the Bank's lien and rely on the validity of the very same lien transferred to Westover for purposes of benefiting under the Confirmed Plan and APA.[145]

Furthermore, seeking a judgment that the Bank did not hold a valid, prior lien against the Boats undermines the credit bid authorized by the Procedural Orders which was essential to the APA approved by the Sale Order as well as to the Confirmed Plan and Confirmation Order. The Creditors, who had notice and an opportunity to be heard on approval of the credit bid, the

---

[143] Confirmed Plan, § 5.1.2(c); Adv. P. Dkt. No. 96.
[144] Creditors' SJ Response, ¶ 36.
[145] *Cf. New Hampshire v. Maine*, 532 U.S. 742 (2001) (judicial estoppel bars inconsistent factual positions that afford unfair advantage or impose an unfair detriment).

transactions with Westover and confirmation of the Debtor's plan, failed to appeal any of the

mentioned Orders. In fact, the Creditors consented to approval of the APA and agreed that

Westover—who they acknowledge acquired the same rights held by the Bank—had an allowed

secured claim that could be credit bid. For these reasons, to the extent not moot, the Declaratory

Judgment Action is barred as an improper collateral attack of the Confirmed Plan and the noted

Orders and must be dismissed with prejudice.

### C.    The Court Does Not Have Jurisdiction Over the Negligence Action and it Must Be Dismissed Without Prejudice.

In the Negligence Action, the Creditors are seeking general and special damages with

pre-judgment interest against the Bank.[146] The Bank maintains that the Court should dismiss the

Negligence Action with prejudice because the Creditors cannot establish negligence as a matter

of law. It requests that the Court strike the Motion to Dismiss arguing that, having been filed

after the close of discovery and in response to its SJ Motion, the Motion is a tactical effort to

avoid summary judgment on the merits. The Creditors argue that the Court should dismiss the

Negligence Action without prejudice so that it can be decided in the state court. If the

Negligence Action is not dismissed, the Creditors argue that the SJ Motion should be denied

because there are genuine disputes as to material facts. The Court will not address these

arguments because it lacks subject matter jurisdiction.

The Negligence Action does not "arise under" the Bankruptcy Code because negligence

is not a cause of action created by the Bankruptcy Code. It also does not "arise in" the

bankruptcy case because it is a dispute that existed outside of the Debtor's bankruptcy case and

is not dependent on the case. Finally, prior to confirmation of the Debtor's plan, this dispute

---

[146] Complaint, ¶ 47 and p. 35 (Prayer for Relief, ¶¶ a, d).

between the Creditors and the Bank was not "related to" the Debtor's case because it could not

have had a "conceivable effect" on the estate or the administration of the Debtor's estate.[147] Not

being "related to" the Debtor's case prior to the confirmation of the Debtor's plan, the

Negligence Action clearly does not become "related to" the Debtor's case post-confirmation. The

Court therefore lacks subject matter jurisdiction over the Negligence Action and it must be

dismissed without prejudice.

## IV.    **CONCLUSION**

For the reasons stated above, the Court concludes that the Bank's SJ Motion is granted in

part and denied in part. The Creditors' Motion to Dismiss is granted in part and denied in part.

The Third-Party Claim against the Bank is dismissed as follows: (1) the Avoidance Action is

dismissed with prejudice; (2) the Declaratory Judgment Action is moot and, therefore, the Court

lacks jurisdiction and it must be dismissed; (3) alternatively, to the extent the Declaratory

Judgment Motion is not moot, it is dismissed with prejudice; and (4) the Court lacks subject

matter jurisdiction over the Negligence Action and it is dismissed without prejudice.  The Court

will enter a separate *Order* in accordance with Federal Rule of Civil Procedure 58, made

applicable in this proceeding by Bankruptcy Rule 7058.

--END OF DECISION--

---

[147] *Gardner*, 913 F.2d at 1518.

## <u>DESIGNATION OF PARTIES TO BE SERVED</u>

Service of the foregoing ***MEMORANDUM OF DECISION*** shall be served to the parties and in the manner designated below.

**By Electronic Service**: The parties of record in this case, as identified below, are registered CM/ECF users.

- Matthew James Burne     matthew.burne@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- Doyle S. Byers     DSByers@hollandhart.com, BKNoble@hollandhart.com
- Kenneth L. Cannon     kenneth.cannon@dentons.com, kristin.hughes@dentons.com
- John S. Gygi     john.gygi@sba.gov
- Justin D. Heideman     jheideman@heidlaw.com, jthompson@heidlaw.com;mfoote@heidlaw.com;receptionist@heidlaw.com;vwillis@heidlaw.com;acooley@heidlaw.com
- Penrod W. Keith     penrod.keith@dentons.com, kristin.hughes@dentons.com
- Engels Tejeda     ejtejeda@hollandhart.com, slclitdocket@hollandhart.com,intaketeam@hollandhart.com;lahansen@hollandhart.com
- Richard C. Terry     richard@tjblawyers.com, cbcecf@yahoo.com
- Aaron M. Waite     aaronmwaite@agutah.gov

**By U.S. Mail**: In addition to the parties receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

*Adam Lee*
*P O Box 713*
*Salem, UT 84653-0713*

*Casey Warren*
*1117 Falcom Circle*
*Mapleton, UT 84664-4734*

*Phillip Geurts*
*Geurts Law Firm*
*17011 Beach Blvd., Suite 900*
*Huntington Beach, CA 92647*